ORIGINAL
D+F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ELVIS MINAYA,

          Plaintiff,

-against-

BOARD OF EDUCATION OF THE CITY OF
NEW YORK and REGINA LOUGHRAN in her
individual capacity,

          Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 03-CV-1988 (FB) (MDG)



FILED
U.S. ... E.D.N.Y.
BROOKLYN OFFICE

*Appearances:*
*For the Plaintiff:*
AMBROSE W. WOTORSON, JR., ESQ.
Law Offices of Ambrose Wotorson
26 Court Street
Suite 1811
Brooklyn, NY 11242-1118

*For the Defendants:*
JASON ROBERT BOGNI, ESQ.
New York City Law Department
Office of the Corporation Counsel
100 Church Street
New York, NY 1007-2601

**BLOCK, Senior District Judge:**

      Plaintiff, Elvis Minaya ("Minaya"), brings three claims under 42 U.S.C. § 1983, alleging that defendants, the Board of Education ("Board") and Regina Loughran ("Loughran"), discriminated against him on account of his sex, and deprived him of his liberty and property rights without due process of law. Pursuant to Federal Rule of Civil Procedure 56, defendants move for summary judgment. The motion is granted.

# BACKGROUND[1]

In September 1997, Minaya began working for the Board as a high school Spanish teacher. He was hired at Health Career and Science High School ("HCS") in September 2000, at which time the principal told Minaya that he could reasonably expect to be employed so long as his teaching license remained valid. According to Human Resources records, while at HCS, Minaya served as a certified long-term substitute, also known as a Certified Provisional Teacher.

In the Fall 2000 semester, Minaya awarded failing grades to all but four of the students in his advanced Spanish class; two days later, two female students complained to the principal that Minaya had engaged in sexually-inappropriate conduct by asking one out on a date and staring at the second one; consequently, the Board referred the matter to the City of New York's Office of the Special Commissioner of Investigations ("OSCI").

The OSCI investigator, Anthony Continanzi ("Continanzi"), interviewed a total of five students: the two who made complaints and three females students who were also in Minaya's class; no male students were interviewed. Two of the students interviewed separately advised Continanzi that Minaya had given them his cell phone number for the purpose of arranging dates with him. Another of the students claimed that Minaya had stared at her in a manner that made her uncomfortable. The remaining two contended that Minaya generally displayed angry and aggressive behavior towards his students. Additionally, Continanzi and another OSCI investigator interviewed Minaya;

---

[1] The background is taken from the parties' affidavits and other documents submitted in support of their papers. The facts presented are either undisputed or, if disputed, stated in the light most favorable to Minaya.

2

Continanzi alleges that Minaya admitted that he gave his phone number to two students for the purpose of arranging a date, but insisted that he had no sexual intent. Based on the investigation, OSCI issued a report, signed by Loughran, the Deputy Commissioner of OSCI, recommending to the Chancellor of New York City Public Schools that the Board terminate Minaya.

Thereafter, Minaya, accompanied by a union representative, met with the Chancellor's District Deputy Superintendent to respond to OSCI's recommendation; Minaya denied the allegations, and denied admitting to the OSCI investigators that he ever gave his phone number to a female student. Additionally, he produced, *inter alia*, a petition signed by several students stating that they did not see him act inappropriately, and a letter by a student alleging that she had overheard four students, including the two who made the initial complaints about Minaya, conspire to retaliate against Minaya for issuing them failing grades. In a letter dated December 21, 2000, the Deputy Superintendent informed Minaya that he would be terminated effective January 31, 2001, the last day of the term, and that Minaya would be placed on the Board's list of individuals ineligible for employment at the Board.

Thereafter, Minaya filed a grievance with the Chancellor, alleging that his rights under the Collective Bargaining Agreement were violated because he was (1) denied representation when he was interviewed by the OSCI investigators, and (2) denied the opportunity to adequately respond to the OSCI findings. The Chancellor found that the record "d[id] not substantiate the allegations that [Minaya] attempted to date students[,]" but found that "allegations of improper comments and inappropriate behavior [we]re

3

substantiated by several students and [Minaya's] own admission at the [hearing before the Deputy Superintendent] that 95% of the allegations [we]re false." Ex. D at 3. The Chancellor denied the grievance, but found that Minaya should be given an opportunity to submit written objections to the OSCI report and further directed that those objections "be attached to the report." Minaya never submitted any objections.

Subsequently, Minaya obtained employment as a full-time Spanish teacher in school districts outside of New York City.

## DISCUSSION

A court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

In considering a motion for summary judgment, the court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 255). Where, however, the non-moving party bears the burden of proof at trial, the moving party need only "'show[]' – that is, point[] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Upon such a showing, "the non-moving party must respond with 'specific facts showing that there is a genuine issue for trial,'" *Golden Pac. Bancorp. v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)); conclusory statements, conjecture and

other types of unsupported assertions are not sufficient. *See Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14 (2d Cir. 1995).

As the Second Circuit has observed, summary judgment in a discrimination case should be granted with caution "because 'smoking gun' evidence of discriminatory intent is rare and most often must be inferred." *Forsyth v. Federation Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005). Summary judgment is nevertheless appropriate when "the moving party has submitted facts sufficient to show that the non-moving party's claim has no merit, and the non-moving party's attempts to rebut the movant's facts consist only of 'mere allegations or denials' of the facts asserted by the movant." *Id.* at 570 (quoting Fed. R. Civ. P. 56(e)).

## A. Discriminatory Discharge

Sex-based discrimination by a state actor is actionable under § 1983 as a violation of equal protection. *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (citation omitted). "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Id.* (citations omitted). It is undisputed that the defendants' actions amount to action under color of state law.

A claim of discriminatory discharge is analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The *McDonnell Douglas* analysis applies whether the claim is based on Title VII or, as here, on section 1983. *See*

*Demoret*, 451 F.3d at 151.

First, the plaintiff must establish a *prima facie* case of unlawful employment discrimination by showing that he or she (1) was a member of a protected class, (2) was qualified for his or her position, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001). If a *prima facie* case has been established, "the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." *Id.* at 138. If the defendant does so, then the plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). At this stage, the plaintiff must demonstrate not only that the employer's proffered reason was false, but that the real reason was unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct."). In this regard, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

The defendants contend that Minaya has failed to establish a *prima facie* case of employment discrimination because he cannot establish that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of sex. The

Court agrees. To establish an inference of discrimination on the basis of sex, Minaya relies on the defendants' failure to interview any male students in conducting their investigation and argues that in conducting their investigation the defendants inexplicably ignored numerous pieces of evidence in Minaya's favor. As an initial matter, the defendant's failure to interview male students simply does not raise an inference of sex discrimination; it is perfectly logical that the defendants would interview only females because females were the potential victims of the alleged sexual harassment. Furthermore, although Minaya successfully points to several pieces of evidence that, if true, cast serious doubt as to the outcome of the defendant's investigation, a botched investigation is not sufficient to raise an inference of sex discrimination. At most, the evidence of the botched investigation suggests a possible over-reaction on the Board's behalf to allegations of sexual harassment; however, Minaya has not presented a scintilla of evidence suggesting that the defendants would have treated a female accused of the same misconduct any differently. Accordingly, the defendants are entitled to summary judgment as to Minaya's discriminatory-discharge claim.

## B. Procedural Due Process

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Thus, as a threshold matter, the Court must determine whether Minaya had a protected interest, *see Narumanchi v. Board of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (citation omitted); if a protected interest is identified, the Court must then determine what process

7

was due to Minaya and whether that process was provided. *See id.* (citation omitted).

**1. Liberty Interest**

Minaya contends that he was denied a liberty interest when the defendants made false, stigmatizing statements in the course of terminating his employment. "The Supreme Court has made clear that the right to 'notice and an opportunity to be heard' are prerequisites to government action – including employment termination – that places a person's good name, reputation, honor, or integrity at stake." *Vega v. Miller*, 273 F.3d 460, 470 (2d Cir. 2001) (citation omitted). The defendants do not dispute that the allegations of sexual misconduct are sufficiently stigmatizing to place Minaya's reputation at stake. *See, e.g., Brandt v. Board of Co-op. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir. 1987) ("[C]harges that the employee is guilty of dishonesty or immorality are stigmatizing because they call into question the person's "good name, reputation, honor, or integrity.").

In addition, to establish a liberty interest, "[t]he charges must be made public by the government employer, the employee must allege that the charges are false, and the alleged defamatory statements must be made in the course of terminating the employment[.]" *Id.* (internal citations and quotation marks omitted). In a case also involving allegations that a public school teacher engaged in sexual misconduct, the Second Circuit held that a charge is "made public" if the employee shows "that prospective employers are likely to gain access to his personnel file and decide not to hire him[.]" *Brandt*, 820 F.2d at 45. The circuit court reasoned that "[i]n applying for jobs, if [an employee] authorizes the release of his personnel file, the potential employer would find out about the allegations of sexual misconduct and probably not hire him. If he refuses to

8

grant authorization, that, too, would hurt his chances for employment." *Id.*

Minaya contends that he has met his burden of showing that the charges were "made public" in two respects: (1) the New York City Board of Education will never hire him again because he has been placed on its ineligible list, and (2) although the "smaller" school districts for which he has worked since his termination have not conducted background checks on Minaya, in the future, other school districts may conduct them and consequently decide not to hire him.

As an initial matter, the Board's placement of Minaya on its ineligible list is not sufficient to constitute publication because the Board has not made the charges public to *another* employer. *See McDonald v. Board of Educ. of City of New York*, 2001 WL 840254, at *8 (S.D.N.Y. July 25, 2001) ("If a State employer internally disseminates erroneous information concerning an employee's termination, thereby making it more difficult for that employee to seek re-employment with that employer, the employer has not deprived the employee of his protected liberty interest."). Minaya's second justification fares no better because Minaya has not presented any evidence demonstrating that employers are "likely" to investigate the circumstances of his leaving the Board, particularly in light of the fact that he left the Board almost six years ago and has since been employed by other school districts. Moreover, Minaya has not demonstrated that the Board will maintain in his personnel file any of the documentation surrounding his termination beyond the non-stigmatizing statement that he is ineligible for future employment at the Board. *See McPherson v. New York City Dep't of Educ.*, --- F.3d ----, 2006 WL 1967033, at *4 (2d Cir. July 13, 2006) (granting summary judgment on the ground that the stigmatizing statements

9

were not made public where "[t]he City has maintained that the reasons for placement on the 'Ineligible/Inquiry List' remain confidential, and Plaintiff has provided no evidence suggesting otherwise."). Accordingly, the defendants are entitled to summary judgment on this claim.

## 2. Property Interest

Lastly, Minaya contends that he was deprived of a property interest in his continued employment at the Board. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge." *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 212 (2d Cir. 2003) (citation and quotation marks omitted). "[A] plaintiff 'must have more than a unilateral expectation .... He must, instead, have a legitimate claim of *entitlement* ....'" *McPherson v. New York City Dep't of Educ.*, --- F.3d ----, 2006 WL 1967033 (2d Cir. July 13, 2006) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (emphasis in original).

Although Minaya alleges that he was told that he could reasonably expect to be employed for the duration of the validity of his teaching license, and thus that he expected that he could not be dismissed without cause, this expectation was his alone, which is not sufficient to establish a constitutionally-protected property interest. *See id.* Moreover, Minaya has not submitted any evidence supporting the proposition that provisional teachers are guaranteed protection against dismissal without cause. Accordingly, he does not have a protected property interest in continued employment by the Board. *See McPherson*, 2006 WL 1967033 at *4 ("[Plaintiff's] complaint does not allege that provisional teachers are guaranteed protection against dismissal without cause, and

10

no evidence to that effect was offered in opposition to summary judgment. Having shown nothing more than a unilateral expectation of continued employment, [plaintiff] failed to demonstrate that she enjoyed a property interest protected by the Constitution."); *see also Cohen v. Litt*, 906 F. Supp. 957, 966 (S.D.N.Y. 1995) ("Under New York law, however, service as a provisional probationary teacher does not confer a property right." (citations omitted)).

## CONCLUSION

Defendants' motion for summary judgment is granted in its entirety and Minaya's complaint is dismissed.

FREDERIC BLOCK
United States Senior District Judge

Brooklyn, New York
July 31, 2006

11